# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# AT WINCHESTER

| | | |
|---|---|---|
| LILY O. BARNES, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:04-cv-10 |
| | ) | (4:02-cr-47) |
| UNITED STATES OF AMERICA, | ) | EDGAR/CARTER |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

### INTRODUCTION

This matter is before the Court on a motion filed by Lily O. Barnes ("Petitioner") to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 1). Petitioner argues her counsel rendered constitutionally ineffective assistance based upon a number of deficiencies.

Because I find from the motion and the record of this case that petitioner is not entitled to any relief on her claims, I recommend the petition as amended be DENIED and DISMISSED.

### FACTS

Petitioner was charged in a nine-count indictment with possession of equipment, chemicals, products, and materials that could be used to manufacture methamphetamine in violation of 21 U.S.C. § 843(a)(6) (Count One); possession with the intent to distribute Schedule II controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count Two); possession with the intent to distribute Schedule IV controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D) (Count Three); three counts of possession of firearms having been previously convicted of a felony in violation of 18 U.S.C. § 922(g)(1) (Counts Four, Five

and Eight); two counts of distributing a Schedule III controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D) (Counts Six and Seven); and possession of ammunition having been previously convicted of a felony in violation of 18 U.S.C. § 922(g)(1) (Count Nine). (R. 2, Indictment).

Pursuant to an agreement with the United States, petitioner pled guilty to Counts Two and Eight. (R. 21, Courtroom Minutes). The United States agreed to dismiss the remaining counts at sentencing. A factual basis for the plea was prepared and contained the following summary:

> a. On December 7, 2001, ABC Special Agent Josh Melton and other officers executed a state search warrant at defendant's residence in Tracy City, Grundy County, Tennessee. During the search of defendant's home, officers found a small amount of marijuana (.3 grams), 123 prescription pills, all of which were lab tested and are either Schedule II or Schedule IV drugs, and items typically associated with the manufacture and distribution of methamphetamine, including handheld scales, a one-pound plastic container of crystal iodine, approximately half full; 7 boxes of 20 caplets each of pseudoephedrine. Also found in defendant's home was $860 cash and a loaded .38 caliber revolver between the mattresses of a bed in the bedroom; more than 35 of the above-described pills were also found on that same bed. The revolver had previously been shipped in interstate commerce. Also found in that bedroom was a used coffee filter which was suspected to have been used in the past manufacture of methamphetamine. Defendant's billfold contained 2 cut baggie corners of the type typically associated with the packaging of methamphetamine.
>
> b. Also present at defendant's home during the execution of the search warrant was Bobby J. Harris. Officers found a baggie containing a white powder substance which was tested to be methamphetamine (.1 gram) and a glass pipe containing methamphetamine residue in Harris' wallet, which had fallen to the floor. Harris stated that he lived in the motor home behind defendant Barnes' residence. Harris gave written consent to search the motor home, which was parked just behind defendant Barnes' residence in her backyard. Upon searching the motor home, equipment and chemicals which are typically associated with the manufacture of methamphetamine were found concealed. Located in the refrigerator of this motor home was a one gallon jar of 3 layer liquid which had been processed for the manufacture of methamphetamine. This jar was 75% full. Other items found concealed in the motor home were the following: a 5 gallon plastic gas can containing an empty Red Devil lye can, Coleman fuel, coffee

filters, a jar of acetone, a Coke bottle 80% full of brownish liquid (acid), and a Coke bottle 25% full of brownish liquid (acid). Lab tests on these liquids resulted in no controlled substance being detected.

c. The pills which were analyzed by the lab resulted in the following: oxycodone, Schedule II, 14 pills; alprazolam, Schedule IV, 62 pills; phentermine, Schedule IV, 8 pills; propoxyphene, Schedule IV, 1 pill; pethidine (neperidine), Schedule II, 28 pills; and Proposyphene, Schedule IV, 10 pills. No prescription for any of the recovered tablets was presented nor were any filled or empty prescription bottles located for these drugs.

d. Both Barnes and Harris gave a statement in which defendant stated that she knew a gun was in the residence but never picked it up. In her statement, defendant stated that she was the only person who lived in that trailer, her residence. She further admitted to selling some Xanax and hydrocodone and talked about the profit she made off each pill. She admitted to hiding the scales herself. She also stated that she knew about the crystal iodine being present in her residence and that it was hidden in a plastic container because she didn't want anybody to see it. Defendant stated that the boxes of pseudoephedrine had been brought to her home by Harris. Barnes admitted to placing the money under the mattress.

e. On February 11, 2002, a state search warrant was executed at defendant's residence. During the search of the residence, officers found a small amount of suspected marijuana and 238 pills. Also found in defendant's bedroom was an unloaded Revelation .22 caliber rifle, which had previously been shipped in interstate commerce. Defendant stated that she had forgotten about the gun in her bedroom.

f. On March 14, 2002, SA Melton and other officers went to defendant's residence to arrest her on an outstanding arrest warrant. While there, defendant consented to a search of her residence. Nothing was located in the search. Officers transported Barnes to the Grundy County Sheriff's Office for booking. Upon their arrival at the office, Barnes was found to be in possession of 2 forms of pain medicine in tablet form. Barnes gave a statement to officers admitting to the possession of those tablets with the intent to introduce them into the jail for her own personal consumption. She also stated that she had been selling hydrocodone and Xanax from her residence. She talked about how often she sells pills and about how long it had been since she had sold any prescription pills. She also talked about the profit she makes off of these pills. The lab results show 16 pills which tested positive for dihydrocodeinone, a Schedule III controlled substance.

> g. On August 16, 2002, ABC conducted an undercover controlled substance purchase from defendant. The confidential informant purchased 16 pills of hydrocodone (dihydrocodeinone), a Schedule III controlled substance as tested and reported by the lab.
>
> h. On August 26, 2002, an ABC confidential informant purchased 7 pills of dihydrocodeinone, Schedule III, as tested by the lab. The informant made this purchase from defendant at her residence.
>
> i. On September 26, 2002, SA Melton and other officers conducted an undercover buy of 10 pills of hydrocodone (dihydrocodeinone) from defendant Barnes at her residence. Later, on September 26, 2002, SA Melton and other officers executed a state search warrant at defendant Barnes' residence. During the search, officers found numerous pills suspected to be Schedule III and IV drugs. These pills were found in a metal tin which was concealed underneath her kitchen counter using a magnet. Officers also found an unloaded Rinogalesi Rigarmi Brescia Italian pistol between mattresses in a bedroom and the following ammunition in the kitchen: one (1) 12 gauge shotgun shell, eleven (11) .22 caliber rounds, one (1) .380 caliber round, one (1) .44 caliber round, and thirteen (13) .38 special caliber rounds. The firearm and ammunition had been previously shipped in interstate or international commerce.
>
> j. Defendant Barnes gave a statement after being advised of her rights. She admitted she knew about the gun, stating that the gun had been traded to her by a Bobby Anderson, along with a knife, in exchange for $25 cash. She also stated that the ammunition was just junk left in her residence. Defendant Barnes further admitted to selling hydrocodone and Xanax.
>
> k. On April 14, 1997, defendant Barnes was convicted for felony possession of a Schedule IV controlled substance in Grundy County, Tennessee.

Petitioner agreed with the factual basis as presented by the United States in support of her guilty plea. (Presentence Report ("PSR") at ¶ 26).

Petitioner's base offense level for her conviction on Count Two for distribution of Schedule II controlled substances was twenty-six pursuant to U.S.S.G. § 2D1.1(c)(7). Two levels were added pursuant to § 2D1.1(b)(1), since weapons and ammunition were possessed during the commission of the offense. (*Id.* at ¶ 29). This brought petitioner's adjusted offense

level to twenty-eight. (*Id.* at ¶ 33).

Petitioner's base offense level for her felon-in-possession conviction on Count Eight was twenty. (*Id.* at ¶ 34). Two levels were added pursuant to § 2K2.1(b)(1)(A) since petitioner was in possession of three firearms and ammunition at the time of the offense. (*Id.* at ¶ 35). Additionally, four levels were added pursuant to § 2K2.1)(b)(5) because Count Eight was committed in connection with another felony. (*Id.* at ¶ 36). Therefore, petitioner's adjusted offense level for her conviction on Count Eight was twenty-six. (*Id.* at ¶ 40).

Petitioner's convictions on Counts Two and Eight were grouped under § 3D1.2(c), resulting in a combined adjusted offense level of twenty-eight, and her total offense level was twenty-five after deducting three-levels for acceptance of responsibility. (*Id.* at ¶ 50). Based on a total offense level of twenty-five and a criminal history category of I, petitioner's guideline range for imprisonment was fifty-seven to seventy-one months. (*Id.* at ¶ 71). Petitioner was sentenced to fifty-seven months imprisonment, the lowest end of the guideline range.

## ANALYSIS

Petitioner has the burden of establishing any claim asserted in the petition. *See Bowers v. Battle*, 568 F.2d 1, 5 (6th Cir. 1977); *Mayes v. United States*, 93 F. Supp. 2d 882, 886 (E.D. Tenn. 2000). In order to obtain relief pursuant to § 2255, a petitioner must prove one of three claims: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid. *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003). "To prevail under 28 U.S.C. §2255, a [petitioner] must show a 'fundamental defect' in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Gall*

5

*v. United States*, 21 F.3d 107, 109 (6th Cir. 1994) (citing *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)).

The Sixth Amendment provides criminal defendants with the right to reasonably effective assistance of counsel. U.S. Const. Amend. VI; *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove an ineffective assistance of counsel claim, a petitioner usually must show (1) counsel's deficient representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced petitioner's defense. *Strickland*, 466 U.S. at 687-88. As the Supreme Court explained, in order to show that counsel's performance was deficient, petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687; *Mallett v. United States*, 334 F.3d 491, 497-98 (6th Cir. 2003)(petitioner must demonstrate a reasonable probability that but for counsel's errors, the result of the proceedings would have been different). Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). The Strickland test, however, must be adjusted in a case where a defendant has pled guilty instead of being found guilty after a trial. *Thomas v. Foltz*, 818 F.2d 476, 480 (6th Cir.), *cert. denied*, 484 U.S. 870 (1987). To successfully challenge a guilty plea on the ground of ineffective assistance of counsel, Petitioner must show that her attorney's performance fell below an objective standard of reasonableness and show a reasonable probability that, but for counsel's errors, Petitioner would not have pleaded guilty and would have insisted on going to trial. See *Hill v. Lockhart*, 474 U.S. 52 (1985); *Nagi v. United States*, 90 F.3d 130, 134 (6th Cir. 1996), *cert. denied*, 519 U.S. 1132 (1997). After her conviction and

sentence are final, "a petitioner must clear a significantly higher hurdle than would exist on direct appeal in order to obtain relief." *Fair,* 157 F.3d at 430 (quoting *United States v. Frady,* 456 U.S. 152, 156 (1982)).

As her first ground for relief, Petitioner asserts that her attorney failed to explain the consequences of her guilty plea and failed to explain the effect of the sentencing guidelines on her sentence. She argues her attorney failed to move the Court for a downward departure based upon her alleged physical impairment and diminished mental capability. She states her attorney failed to object or advise her of "the consequence of the gun charge," asserting the gun was not hers, that she did not know about it, and that the gun was seized from "someone else's home." She alleges her attorney told her the United States would file a Rule 35 motion, and that has not happened.

In ground two, petitioner asserts counsel was ineffective by failing to pursue a direct appeal, stating her attorney told her no basis for appeal existed and that an appeal would prejudice her Rule 35 motion for a reduction of her sentence. She states, "My attorney told me I couldn't appeal, that he wouldn't appeal anything for me, and if I did try to appeal it would make the prosecutor mad and he wouldn't give me the reduction my lawyer told me was already in process, the one (reduction) I haven't seen or heard anything about." [1]

In ground three, petitioner asserts that her plea was involuntary and unknowing, that she did not understand the gun charge, and that she did not understand the effect of the guidelines. She asserts her attorney "took advantage of [her] physical and mental condition and coerced [her]

---

[1] In her final sentence in ground one, petitioner also alleges her attorney told her she could not appeal anything and if she did she would not get a sentence reduction later.

into taking the plea."

GROUND ONE

The general statements alleged in ground one of the petition provide no basis for relief. First, petitioner identifies only one specific point as to counsel's alleged failure to convey information with respect to the guidelines – she claims she did not understand the "consequence of the gun charge." Since her offense level was determined by the drug conviction and not by the lower offense level applicable to the firearms conviction, any misunderstanding as to the guideline calculations on the Count Eight conviction did not prejudice her. The only impact of the firearms on her sentence was the two-level increase in her offense level on the drug conviction. Excluding the impact of the firearms on the sentence would result in a guideline range of forty-six to fifty-seven months, a range that includes petitioner's sentence. Thus even assuming counsel failed to explain specifically that her offense level would be increased two levels for the firearms, petitioner has failed to demonstrate any prejudice as a result. Moreover, she has not attempted to demonstrate that she would not have pled guilty if she had been advised more accurately as to the impact of the guns on her guideline range. Counsel's pre-plea advice as to the gun enhancement provides no basis for relief.

With respect to the allegation in ground one that petitioner did not own the gun and it was seized from someone else's residence, this fact is immaterial. It is not clear from the petition exactly which gun petitioner is contesting. As the factual basis indicates, a number of firearms and ammunition were involved in the offense conduct. In any event, as noted *supra*, the only actual impact on petitioner's sentence as a result of the seizure of firearms was the two-level increase on the drug conviction. Petitioner has failed to demonstrate that counsel could have

objected to all of the guns in the case so that this increase would not have been applicable. Further, petitioner stipulated to the facts relating to the guns in connection with her plea agreement, and received a three-level offense level reduction as a result (Rearraignment proceedings, pp 13, 15). Those stipulated facts supported the offense level enhancement.

Further, in the re-arraignment proceedings, the Court fully and clearly explained the charge to which she was pleading in Count 8. The plea colloquy included the following:

THE COURT: If the clerk would read Count 8.

THE CLERK: Count 8:

The Grand Jury further charges that on or about September 26, 2002, in the Eastern District of Tennessee, the defendant, Lily O. Barnes, having been previously convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess in and affecting commerce a firearm, that is, a Rinogalesi Rigarmi Brescia Italian pistol, which had previously been shipped in interstate and foreign commerce, in violation of Title 18, United States Code, Section 922(g)(1).

How do you plead to Count 8, Ms. Barnes, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: Okay. Ms. Barnes, here you're charged with being a felon in possession of a firearm. Here's what the government would have to prove before you could be convicted. First of all, that you had a prior felony conviction, that's any criminal offense that's punishable by imprisonment by one year or more.

Second, that you knowingly possessed a firearm. In other words, you knew that you had the firearm. It was not an accident or mistake that you had it.

And, finally, that the firearm had traveled in interstate commerce. The way that that is normally proved by the government is that they would prove that the firearm was manufactured in some state or some country outside of the state of Tennessee. In this case it looks like it's an Italian pistol. Do you think you understand what you're charged with?

THE DEFENDANT: Yes, sir.

THE COURT: And knowing what that is, do you still want to plead guilty to Count 8?

THE DEFENDANT: Yes, sir.

(Rearraignment proceedings, pp. 9-10).

Petitioner was under oath and clearly stated that she was guilty and understood what she was charged with and continued in her desire to enter a plea after the Court clearly explained what the government would have to prove to support a conviction. Thus petitioner's factual allegations in her petition as to the guns are either contradicted by the facts to which she stipulated or are immaterial. Certainly petitioner has failed to show that she is entitled to relief based upon her attorney's actions or his omissions related to the presence of the numerous guns in this case. This portion of her petition provides no basis for relief.

Petitioner also contends as part of her claim in ground one that her counsel was ineffective for failing to move the Court for a downward departure based upon her physical and mental condition. Counsel was not deficient in failing to file such a motion because the facts did not support a departure on either basis. The Court asked her if she had ever been treated for mental illness to which she responded, "No, sir." (Rearraignment p. 3). As set forth in the PSR, there was no evidence to support a motion as to petitioner's mental health, as the probation officer indicated. (PSR at ¶ 65). With respect to petitioner's physical condition, in order to merit

a downward departure petitioner would have had to demonstrate through competent medical evidence that she suffers from an "extraordinary physical impairment," and that, given the extent of her infirmities, the prison system is unable to accommodate her medical needs. *See United States v. Tocco*, 200 F.3d 401, 435 (6th Cir. 2000); *United States v. Johnson*, 71 F.3d 539 (6th Cir. 1995), *cert. denied*, 517 U.S. 1113 (1996). Here, the PSR indicated petitioner was taking several medications, these were available to her in the prison where she at the time of sentencing was incarcerated, and she "currently does not need any specialized treatment." Thus there was no basis upon which counsel could have argued her physical needs could not be accommodated in prison, and petitioner has not demonstrated any deficiency or prejudice as a result of counsel's failure to move for a departure on this basis.

The United States points out in their response that rather than file a motion for departure that had no factual basis, petitioner's counsel instead filed a sentencing memorandum in which he properly asked the Court to consider petitioner's age when making its determination as to the length of her sentence. (R. 24, Sentencing Memorandum). Petitioner thereafter received the lowest possible sentence. This action by counsel demonstrates counsel's active, beneficial representation based upon the facts of this case.

Petitioner's final claim[2] in ground one is that her attorney told her the United States would file a Rule 35 motion, which has not happened. The record contradicts that any promise was made to petitioner that a Rule 35 motion would be filed. To the extent that counsel may have encouraged petitioner to cooperate in order to merit a sentencing benefit, that is not

---

[2]Petitioner raises an additional claim in ground one relating to her alleged denial of the right to appeal. This will be discussed later.

deficient advice. To the extent petitioner asserts counsel promised she would receive such a benefit, the record demonstrates petitioner was advised otherwise. The plea agreement and the Court, as is customary in the Court's Rule 11 colloquy with a defendant, advised petitioner that her decision to plead could not be based upon any guarantee of the filing of a Rule 35 motion. (Rearraignment proceeding sealed, p. 5). Petitioner was advised that the determination of whether such a motion would be filed was in the sole discretion of the United States and was not guaranteed. Petitioner's disappointment in the government's failure to file a Rule 35 motion does not prove that her counsel was deficient, or that her attorney could have done anything to change these events, which were outside his control. Petitioner has demonstrated neither prong of the *Strickland* standard with respect to this allegation. The claims made in ground one of the petition are without merit.

GROUND TWO

With respect to the allegation in ground two that counsel advised petitioner not to appeal, this claim provides no basis for relief. To show that counsel performed deficiently in failing to file a notice of appeal, petitioner must demonstrate either "(1) that the attorney disregarded [petitioner's] instructions to file a notice of appeal, or (2) that the attorney failed to consult with [petitioner] about an appeal when he knew or should have known that [petitioner] might want to appeal." *Higbee v. United States*, 2001 WL 1176392, at * 1 (6th Cir. Sept. 26, 2001) (citing *Roe v. Flores-Ortega,* 528 U.S. 470, 478 (2000)). If a client wants to take an impudent appeal, counsel may advise against it, and if the client chooses to abide by counsel's advise even if erroneous, it does not constitute *per se* ineffective assistance of counsel. *See Castellanos v U.S.*, 26 F.3d 717, 719 (7th Cir. 1994). To demonstrate ineffective assistance of counsel regarding an

appeal, petitioner must establish counsel's advice fell below an objective standard of reasonableness which resulted in prejudice to the petitioner.

It is clear that in this case counsel consulted with petitioner about an appeal and advised no direct appeal was warranted. It appears petitioner had advice of counsel regarding an appeal but rejected after the fact, taking counsel's advice. Therefore, the performance prejudice standard of *Strickland v. Washington*, 466 U.S. 668, 687 (1986), applies to this case. Petitioner is actually alleging ineffective assistance of counsel based on improper advice by counsel with respect to appealing the sentence. Thus, petitioner must establish that this advice fell below an objective standard of reasonableness. Petitioner's assertion is "My attorney told me I couldn't appeal anything, that he wouldn't appeal anything for me, and if I did try to appeal it would make the prosecutor mad and he wouldn't give me the reduction my lawyer told me was already in process, the one (reduction) I haven't seen or heard anything about." Petitioner has identified no viable basis for an appeal, and thus counsel's advice was reasonable. Petitioner has not specifically alleged that she instructed counsel to file a notice of appeal despite his advice. It is clear from her allegation that her attorney's advice reflected his opinion that there were no viable arguments to be made on appeal. Although she does say, "He wouldn't appeal anything for me," she then notes that if she did appeal, there would be adverse consequences, presumably the loss of any possibility that she could get a further reduction in sentence. She does not specifically state that she directed him to appeal and that he refused to do so. The petition therefore does not allege that the attorney disregarded petitioner's instruction to file a notice of appeal nor does it allege a failure to consult with petitioner about an appeal. Moreover, even if we assume petitioner could prove counsel's advice not to pursue an appeal was deficient performance, then

she must also hurdle the prejudice prong of the *Strickland* test. *Moore v. Carlton*, 74 F.3d 689, 692 (6th Cir.), *cert. denied*, 516 U.S. 1183 (1996). There is nothing in the record before the Court to indicate petitioner had a valid issue to appeal that would have revealed some reversible error. Petitioner has failed to present anything upon which the Court can base a finding of actual prejudice. This claim in ground two does not satisfy either prong of the *Strickland* standard as petitioner has not demonstrated counsel's advice not to file an appeal fell below an objective standard of reasonableness and prejudiced petitioner, *i.e.* but for counsel's failure to file an appeal, there is a reasonable probability the outcome of his case would have been different.

GROUND THREE

Petitioner's final ground for relief is that her plea was involuntary and unknowing because counsel coerced her into pleading guilty. Petitioner provides no specific information to support this general allegation, and it provides no basis for setting aside her convictions and setting this case for trial. *See Ross v. United States*, 339 F.3d 483 (6th Cir. 2003) (unsupported allegation is insufficient to establish prejudice). Contrary to this general allegation, petitioner was questioned by the Court at the time of her pleas and stated on the record under oath that she had not been coerced into pleading guilty and that she was admitting her guilt knowingly and voluntarily. Petitioner is bound by her responses given under oath to the Court's inquiries regarding her knowledge and the voluntariness of her plea. *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986).

Furthermore, petitioner has not identified what possible defense she has to the charges in this case given the overwhelming inculpatory evidence seized and the admissions made by her to the law enforcement officers involved in her case. Having no defense to any of the charges,

counsel was not deficient and petitioner was not prejudiced in any way by counsel's recommendation to her that she plead guilty. The Government argues that but for her guilty plea, if petitioner had gone to trial, petitioner's offense level would have been twenty-eight, and her guideline range would have been seventy-eight to ninety-seven months. The Government argues the relief petitioner requests herein – that her pleas be set aside and the case set for trial – are not in her interest and would result in a higher sentence. In any event, Petitioner has not demonstrated that her attorney was deficient in his advice, that she was coerced into pleading guilty, or that but for counsel's advice she would have gone to trial. The third ground for relief alleged in the petition provides no basis for relief.

MOTION TO SUPPLEMENT BRIEFING

On January 3, 2005, Petitioner filed a Motion to Allow Supplemental Briefing in response to *Blakely v. Washington* which the court will treat as a motion to amend her 2255 Petition (Document 6). In her Motion, Petitioner asserts she was given an enhanced sentence "based on fact finding of a Prosecutor and Probation Officer," that she received enhancements based on various factors which were not charged in the indictment or admitted by her, pursuant to her plea.

Barnes entered her guilty plea on April 21, 2003 (Courtroom Minutes, Document 25) and the Judgment was entered on April 24, 2003 (Document 26). The Court must determine whether the amendment was timely filed as Barnes' proposed amendment is subject to the one year statute of limitations period applicable to a motion filed pursuant to 28 U.S.C. § 2255. *See Oleson v. United States*, 27 Fed. Appx. 566 (6th Cir. 2001) (unpublished table decision), *available in* 2001 WL 1631828 *3. However, under these circumstances the Court must look

not to the general one-year statute of limitations and equitable tolling, but rather to the restarting of the statute of limitations applicable to § 2255 motions on the date *Blakely* was decided.[3]

*Blakely* was decided on June 24, 2004. Had the Supreme Court made *Blakely* retroactively applicable to cases on collateral review, her amendment would be timely as the one-year statute of limitations would not have begun to run until the "date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review[.]" 28 U.S.C. § 2255 (3). However, *Blakely* itself did not announce that it was retroactively applicable. Indeed, the Supreme Court's decision in *Schirro v. Summerlin*, 124 S.Ct. 2519 (2004),[4] which was decided on the same date as *Blakely*, indicates that it is unlikely that *Blakely* will be given retroactive effect in the future. Moreover, *Blakely* reserved judgment regarding the status of the federal guidelines, 542 U.S. at 305 n.9. Thus, the Court finds the

---

[3] A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of–

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the supreme court and made retroactively applicable to cases on collateral review[.]

28 U.S.C. § 2255(3).

[4] The Court determined that their previous decision in *Ring v. Arizona*, 536 U.S. 584 (2002) where they held that a sentencing judge sitting without a jury may not find an aggravating circumstance necessary for the imposition of the death penalty because those circumstances must be found by a jury, was a procedural rule and consequently, did not apply retroactively to death penalty cases already final on direct review.

appropriate question in this matter is whether the rationale in *United States v. Booker*, 543 U.S. 220 (2005), which specifically considered whether the United States Sentencing Guidelines (USSG) violated the Sixth Amendment, applies retroactively to cases in collateral review.

*Booker* did not announce that it was retroactively applicable. In *Booker*, the Court noted that its holding should be applied "to all cases on direct review" but it did not state that the holding should be applied retroactively on collateral review to cases in which the judgment has become final. In fact, the Court quoted *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987) for the proposition that "'a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases. . . pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past.'" *Booker*, 543 U.S. at 268. The *Blakely/Booker* line of cases is essentially an extension of the procedural rules expressed in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) and *Ring v. Arizona*, 536 U.S. 584 (2002) which merely "allocate[d] decision making authority" with respect to sentencing, rather than stating a new substantive rule that may upset a judgment of conviction on collateral review. *See Schirro v. Summerlin*, 542 U.S. 348 (2004) (holding that *Ring* established a new *procedural* rule that does not apply retroactively to cases already final on direct review).

The Sixth Circuit has specifically determined *Booker* is not applicable on collateral review. *Humphress v. United States,* 398 F.3d 855 (6th Cir.), *cert. denied*, 126 S.Ct. 199 (2005). Neither *Blakely* nor *Booker* applies to persons such as Barnes, whose sentence became final prior to the *Blakely* and *Booker* decisions.

Accordingly, Barnes's motion to amend to allow supplemental briefing (Doc. No. 6) is DENIED because such a claim is futile in light of the fact that the Supreme Court has not

17

instructed that *Blakely v. Washington* or *United States v. Booker* should apply retroactively to cases pending on collateral review.

## CONCLUSION

I find no merit to any of Petitioner's arguments. Therefore, I RECOMMEND that:

1). Barnes' § 2255 motion (Doc. No. 1) be DENIED AND DISMISSED WITH PREJUDICE;[5]

2). Any application for leave to proceed *in forma pauperis* on appeal be DENIED;

3). Should Barnes give timely notice of an appeal, such notice be treated as an application for a certificate of appealability and DENIED; and

4). Barnes's motion to amend to allow supplemental briefing (Doc. No. 6) be DENIED

                                                  s/William B. Mitchell Carter
                                                  UNITED STATES MAGISTRATE JUDGE

---

[5] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7, 106 S. Ct. 466, 472 n.7, 88 L. Ed. 2d 435 (1985). The district court need not provide de novo review where objections to this Report and Recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).